**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ **FEB 0 9 2012** ★

**BROOKLYN OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

KEITH LABELLA,

                    Plaintiff,

      -against-

FEDERAL BUREAU OF INVESTIGATION,
OFFICE OF JUSTICE PROGRAMS, and
UNITED STATES DEPARTMENT OF
JUSTICE,

                  Defendants.

---------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**11 CV 0023 (NGG) (LB)**

**BLOOM, United States Magistrate Judge:**

       Plaintiff, Keith Labella, brings this *pro se* action pursuant to the Freedom of Information Act, 5 U.S.C. § 552, *et seq.* ("FOIA") against defendants, Federal Bureau of Investigation ("FBI"), Office of Justice Programs ("OJP"), and United States Department of Justice ("DOJ"). Plaintiff seeks the production of certain documents related to "gang stalking" from defendant FBI and seeks the production of certain data related to the Supplemental Victimization Survey to the National Crime Victimization Survey 2006 (the "Survey") from defendant OJP. Defendants and plaintiff both move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Honorable Nicholas G. Garaufis referred the parties' motions to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that plaintiff's motion for summary judgment should be denied and defendants' motion for summary judgment should be granted.

**BACKGROUND**

**I.    Plaintiff's FOIA Request to Defendant FBI**

On January 11, 2010, plaintiff submitted a FOIA request to defendant FBI.  (Docket entry 18, Statement of Undisputed Material Facts ("Defs.' 56.1 Statement"), ¶ 31.[1])  Plaintiff's request generally sought FBI records relating to gang stalking, which he defines as:

> groups of individuals ("gang stalking groups") operating territorially and nationwide, and, in communication and collusion with each other, to violate the civil rights of, and disrupt, destabilize and finally destroy individuals who are put on a Stalking List for various reasons.  The gang stalking groups use both intensive physical and electronic surveillance means to do this.

(Hardy Decl. at Ex. A.)  Plaintiff's FOIA request specified thirty-seven categories of records relating to gang stalking.  (Id.)  On November 10, 2010, defendant FBI produced 298 pre-processed documents in response to plaintiff's request.  (Defs.' 56.1 Statement, ¶ 33.)  Defendant FBI withheld certain information from these pre-processed documents pursuant to FOIA exemptions (b)(2), (b)(6), (b)(7)(C), and (b)(7)(D).  (Id. at ¶ 35.)  The documents produced on November 10, 2010 were the result of a search of the Central Records System conducted on December 9, 2009 in response to a nearly identical FOIA request regarding gang stalking.  (Hardy Decl., ¶ 24.)  The prior FOIA request was identical to plaintiff's January 11, 2010 FOIA request with the exception that the last two categories of FBI records were not included in the prior request.  (Id.)

---

[1]  Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried.  See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001).  Defendants submitted a statement of undisputed facts pursuant to Local Rule 56.1(a).  (Defs.' 56.1 Statement.)  Plaintiff responded to defendants' statement of undisputed facts pursuant to Local Rule 56.1(b).  (Docket entry 24, Pl.'s Resp. to Defs.' Undisputed Facts ("Pl.'s 56.1 Statement").)  The Court may deem the facts in defendants' Rule 56.1 statement admitted, unless specifically controverted by plaintiff's counter-statement.  See Local Rule 56.1(c).  However, the Court may not rely solely on the statement of undisputed facts contained in the Rule 56.1 statement: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion."  Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5.

The Central Records System is used by the FBI to maintain administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. (Id. at ¶ 14.) The FBI uses the Automated Case Support System to search the General Indices in the Central Records System. (Id. at ¶ 14.) The General Indices consist of main files, which carry the name corresponding with the subject matter of the file, and cross-reference files, which reference an individual, organization, or other subject matter contained in a document located in another main file on a different subject matter. (Id. at ¶ 16.) The General Indices to the Central Records System are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its files on a particular subject matter.[2] (Id. at ¶ 19.)

On December 9, 2009, the FBI searched the Central Records System for responsive documents using the following search terms: gang stalking, community stalking, group stalking, organized stalking, cause stalking, revenge stalking, vigilante stalking, terrorists stalking, community-based harassment, gaslighting, gang stalking groups, street theatre, flashmobbing, gang stalking methods, flashmob, noise campaigns, work place mobbing, electronic harassment, Stalking America, stalking behavior, stalking harassment, stalking research, electronic stalking, publicly funded victim groups, gang stalking list, gang stalking members, gang stalking group members, and stalking. (Id. at ¶ 24.) From this search, defendant FBI identified two main files and one cross-reference file as potentially responsive. (Id.) One of the main files could not be located and the cross-reference file was determined to be not responsive. (Id.) The documents released to plaintiff on November 10, 2010 were from the 252C-IR-C2681 main file and consisted of documents from the National Center for Analysis of Violent Crimes' Research and Development Program regarding a 1990 United States Secret Service workshop on stalking

---

[2] The FBI's Central Records System is also summarized in a decision regarding plaintiff's previous FOIA request. See LaBella v. FBI, No. 07-CV-2330 (NGG)(LB), 2008 U.S. Dist. LEXIS 37847, at *3-5 (E.D.N.Y. May 8, 2008).

behavior. (Defs.' 56.1 Statement, ¶¶ 46-47.) After producing these documents to plaintiff, defendant FBI realized that the documents did not relate in any way to gang stalking as described in plaintiff's FOIA request. (Hardy Decl., ¶ 25.) Defendant FBI claims that plaintiff should have received a "no records" response at the administrative stage instead of the 298 non-responsive documents. (Id.)

Defendant FBI subsequently searched the Central Records System for documents responsive to plaintiff's January 11, 2010 FOIA request. (Defs.' 56.1 Statement, ¶ 49.) During this second search, defendant FBI used the same search terms as before, plus the following terms: terrorist stalking, gas lighting stalking, targeted individual(s), and the book title "Cause Stalking." (Id. at ¶ 51.) Defendant FBI also searched for the following terms as they relate to gang stalking: surveillance, physical surveillance, electronic surveillance, electronic stalking, media, press, publicly funded victims group, funds, funding, targeted individual(s), informants, agent(s) provocateur, list(s), gangstalking list(s), hierarchy, leadership, federal jurisdiction, gang stalking members, gang stalking group members, psychological profiles, complaints, inquiries, internet, national security, state secrets, witness protection program, Freedom of Information Act, FOIA, mass shooting(s), school shootings, counterintelligence program, COINTELPRO, civilian community policing group, citizen informant group, patriot group, public private partnership, neighborhood watch group, INFRAGARD, USAonWATCH, CITIZENCORPS, VOLUNTEERS IN POLICE, military, international law, legal liability, and tort liability. (Id. at ¶ 52.) Defendant FBI's search did not locate any responsive records. (Hardy Decl., ¶ 26.) Defendant FBI also searched the Electronic Surveillance indices, which are used to maintain intercepted electronic and voice communications. (Id. at ¶¶ 20, 27.) The Electronic Surveillance indices include the names of individuals who were subject to electronic surveillance as well as

the date the communication was monitored, the location of the FBI field office conducting the monitoring, and the source number identifying the individual on whom the surveillance was installed. (Id. at ¶ 21.) The search of the Electronic Surveillance indices did not yield any responsive records. (Id. at ¶ 27.)

On November 12, 2010, plaintiff appealed to defendant DOJ's Office of Information Policy. (Defs.' 56.1 Statement, ¶ 36.)

## II.     Plaintiff's FOIA Requests to Defendant OJP

On March 22, 2010, plaintiff submitted a FOIA request to defendant OJP, in which he sought the following information: "[a]ny and all records including graphs, tables, charts, statistics, data compilations, notes and all other similar records and similar information relating to the Supplemental Victimization Survey (SVS) To the National Crime Victimization Survey 2006." (Id. at ¶ 57.) On June 8, 2010, defendant OJP responded to plaintiff's request by producing fifty-seven pages of documents and a data set pertaining to the Survey that contained over 80,000 pages of information.[3] (Lee Decl., ¶ 4.) The data set was created and is maintained using ASCII, SAS, SPSS and Stata software. (Defs.' 56.1 Statement, ¶ 60.)

On July 19, 2010, plaintiff submitted a second FOIA request to defendant OJP, seeking "[a]ny and all records including graphs, charts, tables, statistics, data compilations, data sets, notes and, all other similar records relating to the Supplemental Victimization Survey ('SVS') to the National Crime Victimization Survey 2006; this is a request for 'aggregated data' related to the victim class and distinct sub-groups of victims of said survey but not (i.e., excluding) data related to individual victims." (Lee Decl. at Ex. C.) Plaintiff's request also stated that he could not open the data set that had been provided to him. (Id.) Defendant OJP forwarded plaintiff's

---

[3] OJP's response also addressed plaintiff's May 6, 2010 clarification of his March 22, 2010 request. (Lee Decl. at Ex. B.)

second FOIA request to the Bureau of Justice Statistics, which informed defendant OJP that the disc containing the data set previously provided to plaintiff was also responsive to this new request. (Id. at ¶ 7.) Defendant OJP responded to plaintiff's second request by stating that the survey tabulations and findings were published on the Bureau of Justice Statistics' website and instructed plaintiff how to open the data set provided to him. (Id. at Ex. D.) Defendant OJP did not send plaintiff another disc containing the data set because a disc had already been provided. (Id. at ¶ 8.) Plaintiff then filed an appeal with defendant DOJ's Office of Information Policy. (Defs.' 56.1 Statement, ¶ 63.) On November 19, 2010, defendant OJP provided plaintiff with another copy of the disc containing the data set. (Id. at ¶ 64.) According to Dorothy Lee, the Paralegal Specialist responsible for the FOIA program at OJP, the data set cannot be converted into another software format. (Lee Decl., ¶ 12.)

## PROCEDURAL HISTORY

Plaintiff commenced this action against defendants FBI, OJP, and DOJ on January 4, 2011. (Docket entry 1.) Defendants answered the complaint on March 31, 2011. (Docket entry 8.) The parties cross-moved for summary judgment prior to conducting discovery.[4] (Docket entries 16 and 22.) Plaintiff opposes defendants' motion for summary judgment. (Docket entry 26.) Defendants oppose plaintiff's cross-motion for summary judgment and have replied to plaintiff's opposition. (Docket entry 27.) Plaintiff has replied to defendants' opposition. (Docket entry 28.)

---

[4] Defendants provided plaintiff with the requisite Notice to a Pro Se Litigant pursuant to Local Civil Rule 56.2. (Docket entry 17.)

### DISCUSSSION

I.   **Standard of Review**

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).   A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the non-moving party on summary judgment).  The facts here are viewed in the light most favorable to the non-moving party.

However, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor.  Anderson, 477 U.S. at 257.  "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)).  Moreover, "[t]he 'mere existence of a scintilla

of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment."
Id. (quoting Anderson, 477 U.S. at 252). "Inferences and burdens of proof on cross-motions for
summary judgment are the same as those for a unilateral summary judgment motion." Ferrigno
v. U.S. Dep't of Homeland Sec., No. 09 Civ. 5878 (RJS), 2011 U.S. Dist. LEXIS 38568, at *8
(S.D.N.Y. Mar. 29, 2011) (citing Straube v. Fla. Union Free Sch. Dist., 801 F. Supp. 1164, 1174
(S.D.N.Y. 1992)).[5]

Generally, when a plaintiff is proceeding *pro se*, the Court reads his papers "liberally and
interpret[s] them to raise the strongest arguments that they suggest." Brownell v. Krom, 446
F.3d 305, 310 (2d Cir. 2006) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir.
2003)). However, "the rules afforded pro se litigants are not relaxed when that litigant is also an
attorney." Larsen v. JBC Legal Group, P.C., 533 F. Supp. 2d 290, 295 n.2 (E.D.N.Y. 2008); see
Leeds v. Meltz, 898 F. Supp. 146, 149 (E.D.N.Y. 1995) ("[R]elaxation of already liberal
pleading standards is not appropriate despite the plaintiff's *pro se* status" because "[p]laintiff has
been admitted to practice" law.). Here, the Court takes judicial notice of the records on the New
York State Unified Court System website reflecting that plaintiff is an attorney admitted to
practice in New York.[6] See Century 21 Real Estate, LLC v. Raritan Bay Realty, Ltd., No. CV
07-1455 (CPS)(JO), 2008 U.S. Dist. LEXIS 109507, at *34-35 n.6 (E.D.N.Y. July 24, 2008)
(taking judicial notice of attorney information on the New York State Unified Court System
website); Trs. of Plumbers Local Union No. 1 v. Dan Yant, Inc., No. CV 06-0173 (SJ)(JO), 2007
U.S. Dist. LEXIS 99436, at *27 (E.D.N.Y. Sept. 24, 2007) (same). Therefore, the Court does not
liberally construe plaintiff's complaint and motion papers.

---

[5] The Clerk of Court is directed to send plaintiff the attached copies of all unreported cases cited herein.
[6] According to the records of the New York State Unified Court System, Keith S. Labella, who resides at the same
address plaintiff lists in the complaint, was admitted to practice law in New York in 2002. See
http://iapps.courts.state.ny.us/attorney/AttorneyDetails?attorneyId=5627518 (last visited February 2, 2012).

## II.    The Freedom of Information Act

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978); see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989) (The "basic policy" of FOIA "focuses on the citizens' right to be informed about 'what their government is up to.'"). FOIA requires that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). "FOIA strongly favors a policy of disclosure and requires the government to disclose its records unless its documents fall within one of the specific, enumerated exemptions set forth in the Act." Nat'l Council of La Raza v. DOJ, 411 F.3d 350, 355 (2d Cir. 2005) (citations omitted).

"Summary judgment is the preferred procedural vehicle for resolving FOIA disputes." Adamowicz v. IRS, 552 F. Supp. 2d 355, 361 (S.D.N.Y. 2008). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." Carney v. U.S. Dep't Justice, 19 F.3d 807, 812 (2d Cir. 1994); see also Ruotolo v. Dep't of Justice, Tax Div., 53 F.3d 4, 9 (2d Cir. 1995) ("[T]o prevail on a summary judgment motion in a FOIA case, an agency must demonstrate that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements.").

### A. Plaintiff's FOIA Claim Regarding FBI Records

"When the plaintiff in a FOIA case alleges that the agency in question has improperly withheld documents through its failure to locate them, the agency's burden is to establish that it conducted an adequate search that failed to produce the requested records." Garcia v. U.S. Dep't of Justice, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002) (internal quotation marks and citation omitted); see Grand Cent. P'ship., Inc. v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999) ("When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant.") (citation omitted). "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search . . . are sufficient to sustain the agency's burden." Carney, 19 F.3d at 812. "These agency affidavits must show that the agency made a good faith effort to search for the requested documents, using methods 'reasonably calculated' to produce documents responsive to the FOIA request." Garcia, 181 F. Supp. 2d at 366 (citation omitted). Agency affidavits are presumed to be made in good faith. Carney, 19 F.3d at 812 (citation omitted). The agency's "search for responsive documents need not, and indeed could not be perfect." Garcia, 181 F. Supp. 2d at 368 (citation omitted). "A search is reasonable and adequate even if it fails to produce all relevant material." Id. (internal quotation marks and citation omitted). "The agency is not expected to take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents." Id. (internal quotation marks and citation omitted). When an agency satisfies its burden of showing that it conducted a reasonable search for the requested records, "the plaintiff must show bad faith on the agency's part in order to defeat summary judgment." Jones-Edwards v. Appeal Bd. of the Nat'l

Sec. Agency Cent. Sec. Agency, 352 F. Supp. 2d 420, 423 (S.D.N.Y. 2005) (citing Carney, 19 F.3d at 812).

Plaintiff claims that defendant FBI failed to adequately respond to his January 11, 2010 FOIA request seeking records related to gang stalking. However, the instant record demonstrates that defendant FBI conducted a search reasonably designed to locate responsive records. In support of their motion for summary judgment, defendants submit the declaration of David Hardy, the Section Chief of the Record/Information Dissemination Section within the Records Management Division of the FBI. (Docket entry 19, Hardy Decl.) On December 9, 2009, in response to a FOIA request regarding gang stalking that was nearly identical to plaintiff's January 11, 2010 FOIA request, defendant FBI searched the Central Records System using numerous terms provided within the request.[7] (Id. at ¶ 24.) After producing 298 pre-processed documents to plaintiff on November 10, 2010, which defendant FBI admits were non-responsive, defendant FBI conducted a second, more thorough search for responsive records. (Id. at ¶¶ 25-27.) Defendant FBI searched both the Central Records System, which is used to maintain administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes, and the Electronic Surveillance indices, which are used to maintain intercepted electronic and voice communications. (Id. at ¶¶ 14, 20.) In the Central Records System, defendant FBI searched for main files and cross-reference files and used the same terms as before as well as additional terms.[8] (Id. at ¶ 26.) In the Electronic Surveillance indices,

---

[7] The search terms included: gang stalking, community stalking, group stalking, organized stalking, cause stalking, revenge stalking, vigilante stalking, terrorists stalking, community-based harassment, gaslighting, gang stalking groups, street theatre, flashmobbing, gang stalking methods, flashmob, noise campaigns, work place mobbing, electronic harassment, Stalking America, stalking behavior, stalking harassment, stalking research, electronic stalking, publicly funded victim groups, gang stalking list, gang stalking members, gang stalking group members, and stalking. (Hardy Decl. ¶ 24.)

[8] The additional search terms included: terrorist stalking, gas lighting stalking, targeted individual(s), and the book title "Cause Stalking." (Hardy Decl., ¶ 26.) Defendant FBI also searched for the following terms as they relate to gang stalking: surveillance, physical surveillance, electronic surveillance, electronic stalking, media, press, publicly

defendant FBI searched for all files indexed to "gang stalking" as well as all of the terms used in the Central Records System search. (Id. at ¶ 27.) Defendant FBI's searches failed to identify any responsive records. (Id. at ¶¶ 26-27.)

The declaration of David Hardy is presumed to be made in good faith and sufficiently details how the search for responsive records was conducted. Defendant FBI searched for main files and cross-reference files in both the Central Records System and the Electronic Surveillance indices and used dozens of search terms pulled directly from plaintiff's FOIA request. Although defendant FBI's search failed to identify any records on gang stalking, its search for records was reasonably designed to identify and locate documents responsive to plaintiff's FOIA request. Moreover, the evidence submitted by plaintiff is insufficient to undermine the finding that defendant FBI conducted a reasonable search for responsive records. Plaintiff argues that his "affidavit contains evidence of strong inferences casting significant doubt as to whether defendant FBI could have come to a 'no records' determination after a 'reasonable search' for records relating to the national phenomenon of gang stalking." (Docket entry 26, Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ. J. and in Supp. of Pl.'s Cross-Mot., p. 7.[9]) Plaintiff's affidavit presents a Bureau of Justice Statistics Special Report entitled Stalking Victimization in the United States, articles from the internet and other sources about incidents of gang stalking, and an affidavit from former FBI agent Ted Gunderson who states that "it is [his] professional opinion that the F.B.I. is involved in and has investigative files on the subject of gang stalking, related gang stalking methods, and gang stalking groups in the F.B.I.'s vast intelligence files,

_____

funded victims group, funds, funding, targeted individual(s), informants, agent(s) provocateur, list(s), gangstalking list(s), hierarchy, leadership, federal jurisdiction, gang stalking members, gang stalking group members, psychological profiles, complaints, inquiries, internet, national security, state secrets, witness protection program, Freedom of Information Act, FOIA, mass shooting(s), school shootings, counterintelligence program, COINTELPRO, civilian community policing group, citizen informant group, patriot group, public private partnership, neighborhood watch group, INFRAGARD, USAonWATCH, CITIZENCORPS, VOLUNTEERS IN POLICE, military, international law, legal liability, and tort liability. (Id.)
[9] The Court references the ECF page numbers listed on the top of each page.

that are responsive to Mr. Labella's F.O.I.A. Complaint." (Docket entry 25, Pl.'s Aff., p. 42.)

However, plaintiff's claim that defendant FBI maintains records on the national phenomenon of

gang stalking and withheld those records in bad faith relies only on speculation.[10] Plaintiff's

showing is insufficient to rebut the presumption of good faith to which defendant FBI's search is

entitled. See Garcia, 181 F. Supp. 2d at 368 (Plaintiff's "unsupported claims regarding the

alleged existence of specific classes of documents . . . do not overcome the presumption that the

Government has made a good faith search for documents responsive to his request.").

Accordingly, defendants' motion for summary judgment should be granted on plaintiff's

FOIA claim regarding FBI records and plaintiff's cross-motion for summary judgment should be

denied.[11]

### B. Plaintiff's FOIA Claims Regarding OJP Records

Plaintiff claims that defendant OJP failed to adequately respond to his July 19, 2010

FOIA request when defendant OJP did not produce records relating to the Survey in a different

electronic format.[12] FOIA provides that "an agency shall provide the record in any form or

_____

[10] Plaintiff argues that "[t]he FBI is the nation's leading law enforcement agency and should be presumed to know criminal trends known to other law enforcement agencies, investigators and others." (Docket entry 28, Pl.'s Reply Mem. of Law in Opp. to Defs.' Mot. for Summ. J. and in Supp. of Pl.'s Cross-Mot., p. 8.)

[11] Upon the instant motions for summary judgment, plaintiff argues that defendant FBI improperly withheld information under subsection 7(c) from the non-responsive records produced on November 10, 2010. (Docket entry 26, Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ. J. and in Supp. of Pl.'s Cross-Mot., p. 12.) Indeed, the record reflects that defendant FBI withheld certain information from the 298 pre-processed documents produced to plaintiff on November 10, 2010 pursuant to FOIA exemptions (b)(2), (b)(6), (b)(7)(C), and (b)(7)(D). (Hardy Decl., ¶ 7.) The declaration submitted by defendant FBI does not provide justifications for the FOIA exemptions "[b]ecause the records released to plaintiff were not responsive to his request." (Id. at ¶ 25 n. 4.) Defendants argue that "[b]ecause the records released to plaintiff on November 10, 2010 were not responsive to his request, and because the FBI thereafter conducted subsequent searches to locate responsive records, the FBI's withholding of documents is not at issue in this action." (Docket entry 27, Reply Mem. of Law in Further Supp. of Defs.' Mot. for Summ. J., p. 3 n.2.) Not only is it undisputed that the records produced on November 10, 2010 were not responsive to plaintiff's FOIA request, (Defs.' 56.1 Statement, ¶ 48; Pl.'s 56.1 Statement, ¶ 6.), but plaintiff's complaint does not present a claim against defendant FBI for withholding information pursuant to a FOIA exemption. Plaintiff's complaint does not refer to the exemptions within the November 10, 2010 production and states that "[t]he information released by the FBI is irrelevant, non-responsive, and moot, and, must be stricken and precluded from entering the record." (Compl., ¶ 16.)

[12] Plaintiff's complaint alleges that "the format in which most of the responsive records were provided to him [by defendant OJP] was unacceptable." (Compl., ¶ 23.) Specifically, plaintiff alleges that the statistical data from the

format requested by the person if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B). The Court is not aware of any cases from this Circuit that have interpreted this provision of the FOIA. However, the D.C. Circuit has held that "[u]nder any reading of the statute . . . 'readily reproducible' simply refers to an agency's technical capability to create the records in a particular format." Sample v. Bureau of Prisons, 466 F.3d 1086, 1088 (D.C. Cir. 2006). FOIA requires the Court to "accord substantial weight to an affidavit of an agency concerning the agency's determination as to . . . reproducibility under paragraph (3)(B)." 5 U.S.C. § 552(a)(4)(B).

The record reflects that on March 22, 2010, plaintiff requested the following information from defendant OJP: "[a]ny and all records including graphs, tables, charts, statistics, data compilations, notes and all other similar records and similar information relating to the Supplemental Victimization Survey (SVS) To the National Crime Victimization Survey 2006." (Lee Decl. at Ex. A.)  On June 8, 2010, defendant OJP responded to plaintiff's request by producing fifty-seven pages of documents and a data set pertaining to the Survey that contained over 80,000 pages of information.  (Id. at ¶ 4.) On July 19, 2010, plaintiff submitted a second FOIA request to defendant OJP, seeking "[a]ny and all records including graphs, charts, tables, statistics, data compilations, data sets, notes, and, all other similar records relating to the Supplemental Victimization Survey ('SVS') to the National Crime Victimization Survey 2006; this is a request for 'aggregated data' related to the victim class and distinct sub-groups of victims of said survey but not (i.e., excluding) data related to individual victims."  (Id. at Ex. C.) Plaintiff's second FOIA request to defendant OJP also stated that "the provision of FOIA data in

---

Survey provided to him by defendant OJP was "not openable/readable . . . because the information was coded by proprietary, statistical software, not off-the-shelf to the general public." (Id. at ¶ 23.) Plaintiff requested in his complaint that the Court "order defendant OJP to fully, promptly and fairly disclose all responsive records in its possession to the plaintiff in proper form in regards to his above-stated FOIA request." (Id. at ¶ 26.) However, plaintiff's instant motion does not address whether defendant OJP must provide him with responsive records in a different electronic format.

this format (SPSS, SAS, STATA, etc.) is unacceptable to requester [and] [t]his is not merely a preference of form, but rather, the data in this format (SPSS, SAS, STATA, etc.) is not openable/readable to requester." (Id.) It is undisputed that the data set was created and is maintained using ASCII, SAS, SPSS and Stata software. (Defs.' 56.1 Statement, ¶ 60; Pl.'s 56.1 Statement, ¶ 8.) According to Dorothy Lee, the Paralegal Specialist responsible for the FOIA program at OJP, the data set cannot be converted into another software format. (Lee Decl., ¶ 12.)

Plaintiff now concedes that defendant OJP cannot convert the statistical data from the Survey to another electronic format. (Docket entry 26, Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ. J. and in Supp. of Pl.'s Cross-Mot., p. 15; Defs.' 56.1 Statement, ¶ 65; Pl.'s 56.1 Statement, ¶ 10.) However, even if plaintiff did not concede this issue, the declaration of Dorothy Lee, which must be accorded "substantial weight" by the Court, demonstrates that defendant OJP did not have the technical capability to create records regarding the Survey in a different software format. Accordingly, the records at issue were not readily reproducible in the format requested by plaintiff.[13]

Upon the instant motions, plaintiff argues that defendant OJP failed to adequately respond to his second FOIA request for the "aggregate data" from the Survey. Plaintiff states that "[s]ince OJP could not convert its records to another 'electronic format' it should have attempted to narrow them down and produce a reasonable subset responsive to plaintiff's second FOIA request that was narrower in scope. Instead, OJP chose to do nothing to comply with plaintiff's second FOIA request." (Docket entry 26, Pl.'s Mem. of Law in Opp. to Defs.' Mot.

---

[13] To the extent that plaintiff seeks the production of data from the Survey in printed form, the record does not reflect that plaintiff ever made such a request to defendant OJP. On the instant motion, plaintiff requests, apparently for the first time, that defendant OJP "cull its records in statistical format and make a release of substantially less than 85,000 pages in printed form tailored to plaintiff's second, narrowed FOIA request." (Docket entry 26, Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ. J. and in Supp. of Pl.'s Cross-Mot., p. 16.) Neither plaintiff's FOIA requests to defendant OJP, nor plaintiff's complaint, include any demand for information from the Survey in printed form.

for Summ. J. and in Supp. of Pl.'s Cross-Mot., p. 16.) However, it is not clear that plaintiff even asserted such a claim in the complaint. The majority of allegations against defendant OJP in the complaint relate to the format of the statistical data produced. (Compl., ¶¶ 22-26.) Regarding defendant OJP's failure to produce aggregate data from the Survey, plaintiff alleges only that he "sought to ease the production burden of [the] agency by limiting his aforementioned request to group, 'aggregate' data," that defendant OJP sent him a duplicate copy of the disc containing the survey data set in response to his July 19, 2010 FOIA request, and that "[d]efendants failed to perform an adequate search for the requested records." (Id. at ¶¶ 23, 25, 26.)

Even assuming that plaintiff's complaint does claim that defendant OJP failed to adequately respond to his request for "aggregate data" from the Survey, plaintiff's claim cannot withstand defendants' motion for summary judgment. The record reflects that plaintiff's second FOIA request was forwarded to the Bureau of Justice Statistics, which informed defendant OJP that the data previously sent to plaintiff was also responsive to this new request. (Lee Decl., ¶ 7.) On September 2, 2010, defendant OJP responded to plaintiff's second FOIA request by stating that the tabulations and findings from the Survey are published on the Bureau of Justice Statistics' website, that no additional analyses of the survey dataset are being conducted, and that defendant OJP has "no further information or documents that are responsive to your request." (Id. at Ex. D.) On November 19, 2010, defendant OJP sent plaintiff another disc containing the same data set as previously provided. (Id. at ¶ 11.) In sum, the record reflects that defendant OJP complied with the requirements of FOIA when it produced the statistical data from the Survey to plaintiff. See Ruotolo, 53 F.3d at 9 ("[T]o prevail on a summary judgment motion in a FOIA case, an agency must demonstrate that each document that falls within the class requested either *has been produced*, is unidentifiable, or is wholly exempt from the Act's inspection

16

requirements.") (emphasis added).[14]   FOIA does not impose any obligation on defendant OJP to perform a further analysis of the Survey data to provide plaintiff with "aggregate data."   See Amnesty Int'l USA v. CIA, 728 F. Supp. 2d 479, 499 (S.D.N.Y. 2010) (quoting Landmark Legal Found. V. E.P.A., 272 F. Supp. 2d 59, 65 (D.D.C. 2003)) ("FOIA does not require an agency to create a document in response to a request.").

Accordingly, defendants' motion for summary judgment should be granted on plaintiff's FOIA claim regarding OJP records related to the Survey and plaintiff's cross-motion for summary judgment should be denied.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that plaintiff's motion for summary judgment should be denied and defendants' motion for summary judgment should be granted.

---

[14] Plaintiff relies on Ruotolo to argue that defendant OJP had an obligation to work with plaintiff to re-formulate or narrow his request for "aggregate data" from the Survey.  (Docket entry 26, Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ. J. and in Supp. of Pl.'s Cross-Mot., pp. 17-18.)  However, unlike in Ruotolo, the agency in this case did not determine that plaintiff's request failed to reasonably describe the records sought and did not refuse to search for responsive records.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/Signed by Judge Lois Bloom/

LOIS BLOOM
United States Magistrate Judge

Dated:  February 9, 2012
        Brooklyn, New York

18